AMERICAN ANTENNA CORPORATION, Plaintiff,

v.

WILSON ANTENNA, INC., Defendant.

WILSON ANTENNA, INC., Plaintiff,

v.

AMERICAN ANTENNA CORPORATION, Defendant.

Nos. CV–S–88–258–HDM, CV–S–88–209–HDM.

United States District Court, D. Nevada.

July 13, 1988.

Andrew S. Brignone, Lionel, Sawyer & Collins, Las Vegas, Nev., Richard G. Lione & Richard Campere, Willian, Brinks, Olds, Hofer, Gilson & Lione, Chicago, Ill., for plaintiff.

Robert G. McMorrow, Jr., Dann, Dorfman, Herrell & Skillman, Philadelphia, Pa., Melvin D. Close, Jones, Jones, Close & Brown, Las Vegas, Nev., for defendant.

## ORDER GRANTING PRELIMINARY INJUNCTION

McKIBBEN, District Judge.

Plaintiff American Antenna Corporation (American) commenced this action against Wilson Antenna Inc. (Wilson) for a preliminary injunction restraining Wilson from manufacturing, using or selling its KW–1000 antenna which American alleges infringes the patent currently held by plaintiff and which constitutes unlawful trademark infringement and unfair competition. Wilson seeks similar declaratory relief against American in CV–S–88–209–HDM. The two actions have been consolidated.

In 1975 American commenced development of a new CB antenna which had a unique design for the loaded base (that portion which contains a coil of wire which electrically increases the length of the antenna making it equivalent to a nine-foot whip). On June 17, 1980 patent 255,449 was issued to American. American adopted the trademark K–40 for the antenna and packaged the antenna in a black rectangular box with a three-sided window display through which the customer views the loaded base. Both the shape of the antenna and the packaging were substantially different from other antenna products on the market at the time of its introduction. American has obtained three federal registrations for the K–40 mark which are registration number 1,168,985 granted September 15, 1981, 1,194,226 granted April 27, 1982 and 1,241,911 granted June 14, 1983. American's antenna is sold exclusively through professional CB dealers and not through distributors.

Prior to marketing the K–40 antenna, American engaged in an extensive advertising campaign emphasizing the unique design feature of the K–40. As a result of the widespread publicity and the unique design in packaging of the K–40 antenna, it rapidly became one of the most widely recognized CB antennas in the field and continues to occupy that position. American also developed a booklet for the K–40 which contains facts about the antenna, gives mounting instructions, lists parts and contains a double guarantee which was

unique to the industry at the time American published the booklet. Since 1977 American has sold over one million K–40 antennas and has spent approximately ten million dollars in advertising.

American alleges that Wilson copied the design of plaintiff's K–40 antenna when it introduced its KW–1000 antenna beginning in 1987. The KW–1000, although having a higher retail price, has similar design characteristics and is packaged in a box almost identical to American's K–40 antenna box.

Pursuant to 28 U.S.C. § 1292(c)(1) the law of the federal circuit controls in this court's determination of the patentee's request for injunctive relief. The standard for issuance of a preliminary injunction under the provisions of 35 U.S.C. § 283 requires the court to consider the following factors in evaluating a request by a holder of a patent for injunctive relief: (1) irreparable harm, (2) balance of hardship between the parties, (3) likelihood of success on the merits, and (4) public interest. *T.J. Smith & Nephew Ltd., v. Consolidated Medical Equip., Inc.,* 821 F.2d 646, 647 (Fed.Cir.1987).

■ The court will first consider whether there is a reasonable likelihood that American can succeed on the merits. American contends Wilson has infringed the 449 patent. In order to prevail in this litigation on that issue, plaintiff must show that the 449 patent has been clearly infringed and that it is not clearly invalid. *Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 1233 (Fed.Cir.1985). In determining whether Wilson has infringed the 449 patent, the court applies the ordinary observer test. If an ordinary observer, giving such attention as a purchaser normally would do, would be induced to purchase one product, believing it to be the product whose design was patented, then that product is an infringement of the patent. *Unette Corporation v. Unit Pack Co. Inc.,* 785 F.2d 1026, 1028 (Fed.Cir. 1986), *citing Gorham Mfg. Co. v. White,* 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871). The test is not whether an expert would be deceived, but instead is whether or not an ordinary observer, that is, one who has a reasonable familiarity with mobile antennas and is capable of forming a reasonable judgment as to the similarities of antennas, would be deceived.

Wilson's KW–1000 mobile antenna design is virtually identical to American's patented design. Each has a substantially similar cylindrical body with a similar frusto-conical cap with the whip extending from the cap in an upward direction. Each has a reduced diameter waist below the housing floor and each has an outwardly inclined frusto-conical skirt below the waist. A visual examination of the 449 patent (Exhibit 1) and the KW–1000 antenna (Exhibit 6) depicts strikingly similar space capsule-like antennas. These antennas are substantially different from the others which exist in the marketplace and which were depicted in the exhibits submitted to the court during the hearing of plaintiff's motion. Wilson appears to admit the close similarities between the KW–1000 and the K–40. James W. Wilson, President of Wilson Antenna, Inc. testified he had the K–40 antenna in front of him when he designed the KW–1000. After duplicating the K–40, it appears he simply made design improvements to attempt to create a product superior to the K–40 but with similar construction and design. Slight changes were made in the construction of the semi-spherical base when patent counsel advised Wilson that the construction infringed one of the plaintiff's utility patents. The court concludes that the KW–1000 antenna has adopted most of the substantive ornamental appearance features of the K–40 patented design. While it is larger and not of the exact configuration, the two are so similar that the court finds there is a strong likelihood the plaintiff will prevail in establishing that the ordinary observer would have difficulty distinguishing between the two products and that the KW–1000 antenna infringes on plaintiff's 449 patent.

■ Nevertheless, Wilson contends American cannot demonstrate a likelihood of success on the merits of its claim for infringement of the 449 design patent because the patent itself is invalid. Under 35 U.S.C. § 281, a patent is presumed valid.

*Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 1269 (Fed.Cir.1985). When challenging the validity of a design patent, the burden of persuasion is and remains always on the party asserting invalidity, in this case, Wilson. *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1359 (Fed. Cir.1983). The fact that American now seeks a preliminary injunction rather than a permanent injunction does not change this burden. *H.H. Robertson Co. v. United States Deck, Inc.,* 820 F.2d 384, 387–88 (Fed.Cir.1987).

Wilson first argues the 449 patent is primarily functional, as opposed to ornamental, in nature. Under 35 U.S.C. § 171, a design patent may be granted only for a "new, original and ornamental design." Where a preliminary injunction is being sought based on a design patent, a showing of functionality of the claimed design is sufficient to defeat the moving party's likelihood of prevailing on the issues of validity and infringement. *Power Controls Corp. v. Hybrinetics, Inc.,* 806 F.2d 234, 238–40 (Fed.Cir.1986).

In *Vuitton et Fils S.A. v. J. Young Enterprises, Inc.,* 644 F.2d 769 (9th Cir. 1981), the Ninth Circuit ascribed the following meaning to the term "functional":

> "Functional" ... might be said to connote other than a trade-mark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for the purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection.

644 F.2d at 773, quoting from *Pagliero v. Wallace China Co.,* 198 F.2d 339, 343 (9th Cir.1952).

American has submitted the affidavit of the designer of the K–40, David Maloney, in which he states the stylistic appearance of the K–40 was conceived and designed before the internal components were designed. Specifically, the Maloney affidavit states that several external features of the antenna were designed prior to designing its inner workings, including the following: the loaded base was given a sleek, space capsule-like look; the antenna was provided with a squat, cylindrical housing having smooth, substantially vertical sidewalls; the antenna was given an inwardly extending, flattened, frusto-conical roof, which formed a sharp-edged shoulder with the sidewalls; the antenna was provided with an elongated, frusto-conical tip extending upward from the center of the roof on the housing; and the antenna was given a reduced diameter waist.

American has also submitted the affidavit of Dr. Thomas Wong, associate professor of electrical and computer engineering at the Illinois Institute of Technology. Dr. Wong's affidavit states that the main purpose of the plastic casing for an antenna is to provide mechanical support and protection of the coil. He further states there are numerous choices of shape and size of the casing that can satisfy such a purpose.

The evidence offered at the hearing demonstrated there are several antennas on the market with functional capabilities similar to the K–40 and KW–1000, yet they are dissimilar in ornamental appearance. James Wilson also conceded other commercially feasible alternatives to the shape of the KW–1000 antenna exist. The evidence is substantial that the K–40 was designed primarily for the purpose of visual identification and not to accommodate functional considerations.

Wilson next argues the 449 design patent closely resembles the previously patented Lewis antenna and is therefore invalid based on prior art. Wilson contends the K–40 design is neither novel nor non-obvious under 35 U.S.C. §§ 102 and 103 because its essence had been disclosed in a prior art device. *See Roberts v. Sears, Roebuck & Co.,* 723 F.2d 1324, 1332 (7th Cir.1983).

American's 449 design patent is not substantially similar to the Lewis antenna design, patented May 3, 1966 # 3,249,945. The Lewis antenna has a corrugated, bellows-like cover surrounding the coil. It has curved, sloping corners, and a drastically narrow waist.

In contrast, the K–40 antenna has a sleek, high tech appearance. It has sharp, pointed corners and a smooth, capsule-like cover. It possesses a frusto-conical upper and a gradual indentation at the waist. The court finds that the American 449 design patent was not anticipated by the Lewis 3,249,945 patent.

Finally, the court notes the design of the K–40 antenna has held a unique position in the industry since its introduction in 1977. Widespread acquiescence by competitors and use of the invention in the marketplace is evidence of the "nonobviousness" of a patented invention. *See Windsurfing Int'l Inc. v. AMF Inc.*, 782 F.2d 995, 1000 (Fed. Cir.1986).

Therefore, the court concludes there is a strong likelihood that Wilson will be unable to meet its burden of persuasion that American's 449 design patent is invalid.

■ In order to prevail on its trademark infringement claim, American must establish that the public is likely to be deceived or confused by the similarity of Wilson's marks with American's registered trademarks. *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir.1979). The court must consider the following factors in determining the likelihood of confusion: (1) strength or weakness of the marks; (2) similarity in appearance, sound, and meaning; (3) the class of goods in question; (4) the marketing channels; (5) evidence of actual confusion; and (6) evidence of the intention of defendant in selecting and using the alleged infringing name. *J.B. Williams Co., Inc. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 191 (9th Cir.1975) *cert. denied* 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976).

1. *Strength of the mark.* As was stated in *J.B. Williams*, 523 F.2d at 192, a strong mark is one which is used only in a "fictitious, arbitrary and fanciful manner" and a weak mark is a mark that is a meaningful word in common usage or is merely a suggestive or descriptive trademark. Marks may be strengthened by extensive advertising, length of time in business, public recognition and uniqueness. *Century 21 v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir.1988). Here the evidence established that the K–40 mark is an arbitrary or suggestive mark and has continued to be different from other marks in the CB industry. This mark has been used in connection with antenna sales in excess of one million units, and ten million dollars in advertising has been spent with the emphasis placed upon the design characteristics of the K–40 and the words "K–40." Therefore, the court concludes the unique configuration of the plaintiff's loaded base and its arbitrary K–40 trademark are strong marks entitled to a broad scope of protection.

2. *Similarity in appearance, sound and meaning.* As the court has previously noted, Wilson has created a design for its antenna which is almost identical to the design of the K–40 antenna. Additionally, both start with the letter "K" and both have smaller-sized numbers after the letters. The affidavits filed with the court indicate that in surveys taken members of the purchasing public think of the KW–1000 as simply an enhanced or more expensive model of the K–40. It is likely that consumers will be confused by the similarity of the designs of the two products and that the public will simply conclude the KW–1000 is in some way affiliated with or an enhanced model of the K–40. Therefore, the court concludes the evidence establishes the two marks are sufficiently similar to create potential confusion.

3. *Class of goods in question.* The goods here are CB antennas. Although the court recognizes the KW–1000 has dual amateur/CB radio capabilities, it appears to the court that the primary consumer targeted by each product is the CB purchaser.

4. *Marketing channels.* The evidence established that Wilson intends to market the KW–1000 through the same channels of trade and in the same geographical areas as American. The Wilson product will be sold directly to independent CB dealers

as has been the practice of American since 1977. Neither of the products will be sold through large chain stores or discount houses. Since both products will be sold directly to independent CB dealers, the court finds the marketing channels will be identical.

5. *Evidence of actual confusion.* The plaintiff has submitted survey material to this court which indicates the existence of actual confusion by members of the general public in comparing the K–40 and the KW–1000. Specifically, a survey conducted by Dr. Hans Zeisel, Professor of Law and Sociology Emeritus at the University of Chicago Law School indicated that a substantial percentage of potential consumers questioned thought Wilson's KW–1000 was American's K–40. There is also evidence from product dealers of confusion between the K–40 and the K–1000. (See plaintiff's exhibits 37–57). Many of the dealers believed the KW–1000 to be an improved or enhanced version of the K–40.

6. *Evidence of defendant's intention.* The evidence in this case is persuasive that James Wilson intended at the time he created the KW–1000 to trade on the good will of the plaintiff's K–40 trademark and unique design. Wilson uses the K–40 trademark throughout its advertising. It markets the KW–1000 through the same means as plaintiff through professional CB dealers. It has adopted an identical double guarantee and it has taken substantial portions of the material from American's instruction booklet and adopted it in its instruction booklet. James Wilson testified that he had the K–40 antenna before him when he designed the KW–1000 and that he recognizes the substantial similarity between the two products.

Additional evidence of the defendant's intention is shown by the packaging of the antennas. The boxes are the same color, the same configuration and virtually the same size. Each has a plastic window displaying similar portions of the base of the antenna, the lettering is similar on the boxes, and both boxes are designed to be placed in the same location on shelves for the consuming public. The boxes are substanitally different from any others on the market. Further, American markets a gold model of the K–40 which is more expensive and sells for approximately $80, and Wilson used the gold lettering in connection with his model which sells for approximately $80. There is substantial evidence in the record demonstrating willfulness.

The court concludes American is likely to prevail in showing the Wilson product is likely to cause confusion in the marketplace and that Wilson's actions in the development and sale of the KW–1000 constitutes a federal trademark infringement.

■ Finally, American seeks to enjoin Wilson for unfair competition. The ultimate test for unfair competition is exactly the same as for trademark infringement, that is, whether the public is likely to be deceived or confused by the similarity of the marks. *New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194 at 1201 (9th Cir.1979). The court finds American is likely to prevail in showing Wilson's actions constitute unfair competition.

The second factor the court considers in issuing an injunction is whether American will suffer irreparable injury if the injunction is not granted. Irreparable injury is presumed when a holder of a patent presents a strong showing of the likelihood of success on the merits. *H.H. Robertson, Co. v. United States Steel Deck, Inc.,* 820 F.2d 384, 390 (Fed.Cir.1987); *Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 1271 (Fed.Cir.1985).

The third factor American must show is that the threatened hardship and injury to the plaintiff if the injunction is denied outweighs the potential hardship and injury to the defendant if the injunction is granted. There is a substantial probability that if the injunction is denied, American will lose sales and customers and there will be significant confusion in the marketplace. American will doubtless suffer disruption of relationships with its dealers. On the other hand, Wilson has only commenced production and distribution of its antennas. The granting of an injunction will not preclude Wilson from making modifications in its design and packaging to avoid infringing on American's patent. Wilson had full knowledge of the potential problems it

**930**

confronts in this litigation when production of the KW–1000 was commenced.

Finally, while competition in the marketplace is to be encouraged, the public interest is not disserved when conscious and deliberate efforts to copy a patent and trademark resulting in public confusion are enjoined.

Therefore, plaintiff American's petition for preliminary injunction in CV–S–88–258–HDM prohibiting the defendant Wilson from the further manufacture, use, distribution and sale of the KW–1000 antenna pending final judgment in this action is GRANTED. Plaintiff shall post a bond pursuant to Fed.R.Civ.P. 65(c) in the amount of $350,000. The Clerk of the Court shall provide notice to defendant when plaintiff posts the bond which shall cause the preliminary injunction to take effect.

IT IS SO ORDERED.