TIE TECH, INC., Plaintiff–Appellant,

v.

KINEDYNE CORPORATION, a New Jersey corporation, Defendant–Appellee.

No. 00–35815.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 2002.

Filed July 11, 2002.

Bruce A. Kaser, Miller Nash LLP, Seattle, WA, for the appellant.

Thomas N. Young, Young & Basile, P.C., Troy, MI, for the appellee.

Before RYMER, McKEOWN, and GOULD, Circuit Judges.

## OPINION

McKEOWN, Circuit Judge.

This case concerns the validity of a product configuration trademark for the SAFECUT ® "web-cutter" device. The issue presented is whether summary judgment was appropriate on grounds that the design is functional and therefore not protectible as a trademark. Underlying this question is the evidentiary role of a trademark registration in such a proceeding. We affirm the district court's grant of summary judgment against the trademark holder because the product design is not fanciful, but instead wholly functional, and consequently cannot have trademark significance.

## BACKGROUND

Tie Tech makes and markets "wheelchair securement systems" for private and public vehicles. One of its products, the SAFECUT "web-cutter," is used in emergencies to facilitate the quick release of individuals from their securement systems. Tie Tech, which designed and marketed this cutter beginning in the 1980's, describes its product as "a hand-held, well-balanced webbing cutter" that is "made of durable polycarbonate." An advertising image portrays the SAFECUT device in action: a hand is gripping the device with four fingers fitted through an enclosed oval opening; an elongated prong of plastic guides the webbing towards a recessed cutting blade. Tie Tech offered the following depiction of the device:

Tie Tech's
SAFECUT

In 1998, the Patent and Trademark Office (PTO) registered "the entire configuration and arbitrary embellishment" of the SAFECUT device as a trademark on its primary register.[1] Specifically excepted from this trademark were the scalloped "finger indentations" on the handle which the examiner had previously concluded to be functional, thus precluding registration of those aspects of the design. Tie Tech achieved this result not without considerable struggle. The examiner originally rejected the application because, among other grounds, he concluded that the entire configuration was functional in design. After an appeal to the Trademark Trial and Appeal Board (TTAB), however, the application was remanded for further reconsideration, and the examiner without explanation limited his conclusions about functionality to the finger indentations on the handle and the shape of the partially concealed blade.

Kinedyne is a competitor of Tie Tech in the web-cutter market. As late as June 1999, Kinedyne was selling its own distinctive web-cutter. After some of Kinedyne's customers expressed dissatisfaction with Kinedyne's original cutter, one of its sales representatives requested a cutter similar to the SAFECUT design. According to Kinedyne's regional director, he understood that the representative wanted a SAFECUT—styled design because Kinedyne's then-current design "did not meet [unspecified] states' satisfaction."

In response to the special request, Kinedyne redesigned its web-cutter. The resulting Kinedyne cutter is virtually indistinguishable from the SAFECUT—save the color, the manufacturer's name embossed in the polycarbonate frame, and the absence of the scalloped finger indentations in the handle, the most noticeable difference.

Kinedyne's web-cutter

Upon discovery of Kinedyne's new cutter, Tie Tech sued Kinedyne for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, as well as for unfair competition and consumer protection claims under Washington state law. Kinedyne moved for summary judgment, arguing

---

**1.** Prior to this action, Tie Tech also registered the SAFECUT name in connection with the web-cutter device. The validity of that mark is not at issue in this appeal.

that, as a consequence of its functionality, the design mark was invalid pursuant to 15 U.S.C. § 1115(b)(8). The district court agreed and granted summary judgment for Kinedyne.

## DISCUSSION

■ The principal issue in this case is whether the district court properly concluded, as a matter of law, that Tie Tech's product configuration is functional and thus unprotectible. Tie Tech's appeal is two-fold. It first argues that the mere fact of trademark registration alone should have been sufficient to create a material issue of fact and defeat summary judgment. In the alternative, Tie Tech argues that it presented sufficient evidence beyond its registration of non-functionality to warrant reversal. We address each contention in turn,[2] recognizing that at the summary judgment stage our charge "is not [ourselves] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## I. EVIDENTIARY VALUE OF REGISTRATION

■ The relationship between trademark protection and functionality is well established: "The physical details and design of a product may be protected under the trademark laws only if they are non-functional...." *Clamp Mfg. Co. v. Enco Mfg. Co.,* 870 F.2d 512, 515 (9th Cir.1989). The Lanham Act codifies this common law requirement by prohibiting registration of a mark for a product configuration that is functional. *See* 15 U.S.C. § 1052(e)(5) (no protection for a mark which "comprises

any matter that, as a whole, is functional"). Consistent with this threshold registration requirement, Congress has allowed defendants in an infringement action to raise an affirmative defense of invalidity based on a mark's functionality. 15 U.S.C. § 1115(b)(8). This defense, however, is not raised on a clean slate. Rather, it provides the challenger of a mark the opportunity to rebut prima facie evidence of the mark's validity. 15 U.S.C. § 1115(a) ("registration ... shall not preclude another person from proving any legal or equitable defense ... set forth in subsection (b)"). Section 1115(a), entitled "Evidentiary value," provides that "[a]ny registration ... shall be admissible in evidence and shall be *prima facie evidence* of the validity of the registered mark and ... of the registrant's exclusive right to use the registered mark...." (Emphasis added).

As "prima facie evidence of validity," the registration certificate is simply evidence that "in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim, and which *if not rebutted or contradicted,* will remain sufficient." BLACK'S LAW DICTIONARY 1190 (6th ed.1990) (emphasis added).

The cases often refer interchangeably to "prima facie evidence" of validity and "presumption of validity." *See e.g., America Online, Inc. v. AT & T Corp.,* 243 F.3d 812, 818 (4th Cir.2001); *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 936 (7th Cir.1986). We note that from an evidentiary viewpoint, establishment of a prima facie case is often seen as creating a presumption. For example, in the Title VII context, "[e]stablishment of a prima facie case in effect creates a presumption

---

**2.** Tie Tech initially raised a third issue on appeal, namely that Kinedyne waived its statutory defense of invalidity in the district court when it brought a concurrent cancellation proceeding before the PTO. At oral argument, Tie Tech acknowledged that this issue is moot and we therefore do not address it here.

that the employer unlawfully discriminated against the employee." 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 301.29[1][a] (Joseph M. McLaughlin, ed., 2d ed.1997). Thus, while we prefer to use the statutory language because it more precisely conveys the evidentiary nature of the registration, we acknowledge the interchangeability of the terms in practice.

■ In trademark terms, the registration is not absolute but is subject to rebuttal. In essence, the registration discharges the plaintiff's original common law burden of proving validity in an infringement action. *Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 775 (9th Cir.1981); *see also* 15 U.S.C. § 1125(a)(3) (in absence of registered mark, plaintiff has burden of proving nonfunctionality).

Terminology with respect to the invalidity defense based on functionality is likewise not wholly consistent. The cases variously refer to the defendant as having the burden of proof or having assumed a shifting burden of production. This mixing and matching of terms has engendered some confusion in the analysis. For example, in *Vuitton* we held that the "registration ... shifts the burden of proof from the plaintiff, who would have to establish his right to exclusive use in a common law infringement action, to the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such protected use." *Id.* at 775. In contrast, the Seventh Circuit concluded that "[t]he presumption really serves only to shift the burden of production to the defendant." *Liquid Controls*, 802 F.2d at 938.

■ Although the description of the burden shifting is different in these two cases, the result is the same. Overall, the plaintiff retains the ultimate burden of persuasion in a trademark infringement action, namely proof of infringement. A necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark. *See Yarmuth–Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 992 (2nd Cir.1987) (characterizing the plaintiff's burden in an infringement action as a "two-step test"); 4 J. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition § 27:14 (4th ed.2002).

■ Validity, then, is a threshold issue. On this point, the plaintiff in an infringement action with a registered mark is given the prima facie or presumptive advantage on the issue of validity, thus shifting the burden of production to the defendant to prove otherwise—in our case, to provide evidence of functionality. Or, to put it as we did in *Vuitton*, the defendant then bears the burden with respect to invalidity. Once the presumption of validity is overcome, however, the mark's registration is merely evidence "of registration," nothing more. This approach can be characterized as rebutting the prima facie case or "piercing the presumption."

■ Of course, at the summary judgment stage, all "inferences from the facts must be drawn most favorably to the non-moving party." *Vuitton*, 644 F.2d at 776. We also recognize that functionality is generally viewed as an intensely factual issue. *Id.* at 775. Nonetheless, assuming the defendant can demonstrate through law, undisputed facts, or a combination thereof that the mark is invalid, the evidentiary bubble bursts and the plaintiff cannot survive summary judgment. In the face of sufficient and undisputed facts demonstrating functionality, as in our case, the registration loses its evidentiary significance.

Under Tie Tech's theory, on the other hand, a defendant in a trademark infringe-

ment action could never prevail at the summary judgment stage on an invalidity defense because the registration itself would always raise a material issue of fact. This approach not only inflates the evidentiary value of a trademark registration, but ignores situations where functionality can be determined as a matter of law based on undisputed facts.

In support of its position, Tie Tech points to *America Online, Inc. v. AT & T Corp.*, 243 F.3d 812, (4th Cir.2001), where the Fourth Circuit discussed the evidentiary value of the registration:

> Although evidence rebutting the presumption may neutralize the presumption itself—i.e., that the burden of proof on the fact giving rise to the presumption has been met without rebutting evidence—it does not eliminate from the case the evidence itself that gave rise to the presumption. Thus, through the certificate of registration, the Commissioner introduces his opinion that the application of the registrant was sufficient to demonstrate a valid mark.

*Id.* at 818 (internal citations omitted). Although the court did not elaborate on its reasoning, the key to its decision appears to be the conclusion that a mark's registration should be treated as something of an expert's affidavit on its validity.[3]

Despite this interpretation of the certificate's evidentiary value, the *America Online* court further determined that summary judgment was inappropriate because the record contained other material evidence regarding the mark's validity beyond the certificate of registration. *Id.* Thus, the factual scenario in *America Online* is similar to that of *Vuitton* where we concluded that summary judgment was in-

appropriate when the plaintiff presented evidence beyond the registration that "if accepted by the trier of fact, would defeat the claim that the Vuitton design is functional." 644 F.2d at 776. Nothing was remarkable about either case—disputed issues of material fact precluded summary judgment.

Because there were genuine issues of material fact raised by the trademark holder's "other evidence," we cannot speculate as to the reach of the Fourth Circuit's analysis. But we need not reconcile the approach in *America Online* and our own because Tie Tech's case presents a decidedly different evidentiary landscape.

■ What Tie Tech fails to recognize is that we need not weigh any evidence, make any credibility determinations, or otherwise engage in duties appropriate for a fact finder where, as is the case here, there are no disputed material facts. Rather, upon a motion for summary judgment, it is for the court in the first instance to resolve issues of materiality "independent of and separate from the question of the incorporation of the evidentiary standard." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

As the discussion below illuminates, Kinedyne has not only presented evidence of functionality sufficient to overcome the evidence of prima facie validity, but Tie Tech has also failed to raise a material issue of fact. By relying primarily on the same evidence offered by Kinedyne or on evidence that Kinedyne does not dispute, Tie Tech demonstrates that at least in this case, the issue is ultimately one of law, and thus properly disposed of at the summary judgment stage. *See id.* ("Only disputes

---

**3.** We acknowledge, as one commentator notes, that the Fourth Circuit has taken a "decidedly different view" from the Seventh Circuit on the registration's evidentiary signif-

icance. *See* 2 J. Thomas Mccarthy, Mccarthy On Trademarks And Unfair Competition § 12:60 (4th ed.2002).

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). We turn now to the legal analysis of the functionality defense.

## II. FUNCTIONALITY ANALYSIS

 Although the Lanham Act prohibits registration of a mark that "comprises any matter that, as a whole, is functional," 15 U.S.C. § 1052(e)(5), both parties recognize that not all aspects of functionality are precluded from protection. De jure, or legal, functionality must be distinguished from de facto functionality which still may support trademark protection. *Clamp*, 870 F.2d at 515.

 "De jure functionality ... means that the product is in its particular shape because it works better in this shape. . . . [B]efore an overall product configuration can be recognized as a trademark, the entire design must be arbitrary or non de jure functional." *Textron, Inc. v. U.S. Int'l Trade Comm'n*, 753 F.2d 1019, 1025 (Fed.Cir.1985) (quoted in *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1012 (9th Cir.1999)). Thus, for example, even though a bottle is a de facto functional holder of liquid, the bottle's configuration may still qualify for trademark protection if its physical details are nonfunctional and have acquired secondary meaning. *Id.; see also In re Morton–Norwich Prods., Inc.*, 671 F.2d 1332 (C.C.P.A.1982) (holding that configuration of "Glass Plus" spray-bottle warranted trademark protection).

Here, Kinedyne has identified three aspects of the SAFECUT's configuration— ones it incorporated into its own cutter— that it believes are de jure functional, thus precluding trademark protection: the fully enclosed handle; the rounded edges; and the prong which guides the webbing to the recessed blade. Importantly, Tie Tech has not disputed, either before the trial court or on appeal, the following factual assertions made by Kinedyne:

1. The handle design allowing the hand to pass through permits a secure grip;

2. The rounded edges prevent snagging, and help guide material to the blade; and

3. The prong serves both to guide the webbing or belting onto the cutting blade and to reduce the chance of accidental cuts or injuries.

Rather, by focusing primarily on the shape of the SAFECUT's handle, Tie Tech points to evidence in the record that other alternative designs are available which adequately get the job done.

 To begin, there is nothing inherently wrong with Kinedyne's interest in copying the SAFECUT's configuration: "The requirement of nonfunctionality is based' on the judicial theory that *there exists a fundamental right to compete through imitation of a competitor's product*, which right can only be *temporarily* denied by the patent or copyright laws.' " *Clamp*, 870 F.2d at 516 (quoting *Morton–Norwich*, 671 F.2d at 1336 (emphasis added)). Consequently, as early as *Vuitton*, we characterized the distinction between "features which constitute the actual benefit that the consumer wishes to purchase," which do not engender trademark protection, "as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product," which, if incorporated into the product's design by virtue of arbitrary embellishment, does have trademark significance. 644 F.2d at 774 (internal quotations and citations omitted); *see also Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) ("The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a

firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature.").

Unfortunately for Tie Tech, it has not pointed to any evidence of distinctiveness of the SAFECUT design other than those elements essential to its effective use. Instead, Tie Tech suggests something different when it claims that it "is not asking that Kinedyne be barred from having a webcutter with an enclosed blade, a slot and prong to guide the webbing into the blade, or even an opening through which the user can put their [sic] hand," but instead that Kinedyne should "be barred from arranging those elements into a shape that mimics that of the SAFE-CUT®." In other words, Tie Tech argues that the overall appearance of its cutter, and not its separate functional parts, is what deserves protection as a non-functional aspect of its configuration. This cannot be the case. Where the plaintiff only offers evidence that "the whole is nothing other than the assemblage of functional parts," our court has already foreclosed this argument, holding that "it is semantic trickery to say that there is still some sort of separate' overall appearance' which is non-functional." *Leatherman*, 199 F.3d at 1013.

Likewise, Tie Tech's evidence of alternative designs fails to raise a material factual issue under *Leatherman*. As was the case with the pocket tool at issue in *Leatherman*, Tie Tech has presented evidence that there are other webcutters with a variety of appearances and features that effectively cut webbing. In particular, Tie Tech cites to a trade journal which evaluated several webcutters including the SAFECUT and another, the Ortho, which is strikingly similar to Kinedyne's original cutter and is described in the article as "the simplest design—a rectangle with rounded corners [that] several testers found . . . cut the webbing faster than any of the other products." As for the SAFE-CUT, its shape was "lauded immediately"; one tester was quoted as saying "I like the grip . . . . It seems like a natural shape." Narrowing their preferences down to the Ortho and the SAFECUT, the article's testers

> split on their ultimate preference in web cutters. But all present agreed that either of the two finalists—Ortho's Web Cutter or Tie Tech's Safecut—admirably did the job. They both ripped through the test webbing in a single motion. *It simply came down to personal preference.* (Emphasis added).

This evidence certainly supports Tie Tech's contention that adequate alternative designs exist which "admirably" do the job, but to Tie Tech's detriment, it goes further. Because the product review not only demonstrates that a design such as the Ortho may be "highly functional and useful," it also undisputedly shows that the Ortho does not "offer *exactly* the same features as [the SAFECUT]," in particular the secured-grip handle, and thus fails as matter of law to support Tie Tech's interest in precluding competition by means of trademark protection. *Id.* at 1013–14 (emphasis in original).

In *Leatherman* we held that a product's manufacturer "does not have rights under trade dress law to compel its competitors to resort to alternative designs which have a different set of advantages and disadvantages. Such is the realm of patent law." *Id.* at 1014 n. 7. Here, Tie Tech does not dispute that some customers may prefer a specific functional aspect of the SAFE-CUT, namely its closed-grip handle, even though other functional designs may ultimately get the job done just as well. As *Leatherman* reminds us, though, a customer's preference for a particular functional

aspect of a product is wholly distinct from a customer's desire to be assured "that a particular entity made, sponsored, or endorsed a product." *Id.* at 1012 (quoting *Vuitton,* 644 F.2d at 774). Whereas the latter concern encompasses the realm of trademark protection, the former does not. We therefore conclude on this record that the district court appropriately granted summary judgment in favor of Kinedyne.

**AFFIRMED.**