**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LTTB LLC, a California limited liability company, | No. 19-16464 |
| Plaintiff-Appellant, | D.C. No. 3:18-cv-00509-RS |
| v. | MEMORANDUM[*] |
| REDBUBBLE, INC., a Delaware corporation, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted November 18, 2020
San Francisco, California

Before: TASHIMA, NGUYEN, and HURWITZ, Circuit Judges.

LTTB LLC sells t-shirts and other goods bearing its registered trademarks,

the words and design, "LETTUCE TURNIP THE BEET." LTTB brought an

action against Redbubble, Inc., under the Trademark Act of 1946 (Lanham Act), 15

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

U.S.C. § 1051 *et seq.*, alleging that Redbubble infringed on its trademarks by selling products containing the same words and design. The district court granted summary judgment in favor of Redbubble, concluding that, pursuant to the doctrine of aesthetic functionality, LTTB could not preclude others from displaying the phrase on products. *LTTB, LLC v. Redbubble, Inc.*, 385 F. Supp. 3d 916, 920–22 (N.D. Cal. 2019). We have jurisdiction under 28 U.S.C. § 1291, and we apply de novo review. *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 880–81 (9th Cir. 2018). We conclude that the district court correctly concluded that LTTB failed to raise a triable issue that its marks serve the trademark function of source-identification and therefore affirm. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006) ("The principal role of trademark law is to ensure that consumers are able to identify the source of goods.").

1.    The district court did not erroneously rely on the test for aesthetic functionality from *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912 (9th Cir. 1980). Although *Job's Daughters* was "a somewhat unique case" whose "broad language was soon clarified and narrowed," the case remains good law. *Au-Tomotive Gold*, 457 F.3d at 1069.

2

Regardless, the result here is the same under the test for aesthetic functionality articulated in *Au-Tomotive Gold*. Under the first step, the t-shirts, tote bags, and other products bearing the LTTB mark would still function as t-shirts and tote bags without the mark. *See id.* at 1072–73 ("Auto Gold's products would still frame license plates and hold keys just as well without the famed marks."). "Similarly, use of the marks does not alter the cost structure or add to the quality of the products." *Id.* at 1073.

Moving to the second step, the question is whether the marks "perform some function such that the '"exclusive use of [the marks] would put competitors at a significant non-reputation-related disadvantage."'" *Id.* (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001)). It cannot be disputed that competitors would be unable to sell products bearing the phrase if LTTB's marks were protected. This court has been "careful to prevent 'the use of a trademark to monopolize a design feature which, *in itself and apart from its identification of source*, improves the usefulness or appeal of the object it adorns.'" *Id.* (quoting *Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 774 (9th Cir. 1981)); *accord Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 222 (2d Cir. 2012) ("In short, a mark is aesthetically functional, and therefore ineligible for protection under the Lanham Act, where protection of the

mark *significantly* undermines competitors' ability to compete in the relevant market.").

In *Au-Tomotive Gold*, where the defendant admitted that consumers wanted the goods because they identified the sources (Volkswagen and Audi), "the alleged aesthetic function [was] indistinguishable from and tied to the mark's source-identifying nature." *Au-Tomotive Gold*, 457 F.3d at 1074. By contrast, there is no evidence here that consumers buy LTTB's goods because they identify LTTB as the source, rather than because of the aesthetic function of the phrase, "LETTUCE TURNIP THE BEET."

LTTB presented evidence of the popularity of its goods, but that evidence does not raise a triable issue as to whether consumers buy the products because they identify LTTB as the source of the goods. Its evidence includes anecdotes from Elektra Printz Gorski, LTTB's founder and owner, that celebrities wear the

4

shirts and that a customer emailed her, as well as printouts of the goods offered for sale on the LTTB Etsy website.[1]

Although LTTB's evidence may indicate that its goods are popular, it does not indicate that consumers buy the goods because the marks identify LTTB as the source of the goods. In *Vuitton*, the plaintiff presented an affidavit by a buyer of goods for a department store stating that it was unlikely "there is anyone who would purchase a Vuitton product solely because they found the characteristic Vuitton trademark to be aesthetically pleasing," but instead "it is because the design associates the products with Vuitton." *Vuitton*, 644 F.2d at 776. Unlike *Vuitton*, LTTB has presented no evidence that consumers buy the goods because the design associates the goods with the company LTTB rather than because they want goods bearing the phrase.

_____

[1] The printouts show images of LTTB's products and three five-star reviews. But, almost all the products bear the phrase "LETTUCE TURNIP THE BEET" on them, indicating that the phrase acts as an aesthetic design, not as a symbol for the company. *Cf. EMI Catalogue P'ship v. Hill, Holliday, Connors Cosmopulos Inc.*, 228 F.3d 56, 63 (2d Cir. 2000) (rejecting the claim that a "song itself serves as a 'symbol or device' that indicates its source" because trademark law "does not protect the content of a creative work of artistic expression as a trademark for itself"). The comments in the reviews state: "Fast shipping. Product as described/true to photo. I would highly recommend!" and "Great stickers shipped on time. Thank you." This evidence does not support LTTB's contention that consumers purchase the products because they are source-identifying rather than merely aesthetically pleasing.

LTTB has presented no evidence to avoid the conclusion that the marks here "serve an aesthetic purpose wholly independent of any source-identifying function" and thus are aesthetically functional. *Au-Tomotive Gold*, 457 F.3d at 1073. Therefore, LTTB's evidence does not raise an issue of fact as to whether consumers buy the products because they identify LTTB as the source.

    **2.**    Despite the fact that LTTB's trademarks are registered and two of them are incontestable, *see* 15 U.S.C. § 1115(b), the right to use registered marks is subject to nine "defenses or defects" listed in the statute, including "[t]hat the mark is functional." *id.* § 1115(b)(8). The defense of functionality "provides the challenger of a mark the opportunity to rebut prima facie evidence of the mark's validity." *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 782 (9th Cir. 2002); *see* 15 U.S.C. § 1115(a). Because, on this record and when used on the allegedly infringing products that are the subject of LTTB''s complaint, LTTB's marks are functional, they are not protectable against any type of allegedly infringing activity.[2] *See Tie Tech*, 296 F.3d at 783 ("[T]he plaintiff retains the ultimate burden of persuasion in a trademark infringement action, namely proof of

---

    [2]    The district court pointed out that Redbubble's argument was not that LTTB's registered trademarks are per se invalid, but that LTTB could not "show[] a likelihood of confusion as to source, where the mere use of the pun on the face of various products cannot be source-identifying." *LTTB*, 385 F. Supp. 3d at 921. Similarly here, we do not hold that LTTB's marks are per se invalid.

infringement. A necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark."). We therefore reject LTTB's contentions that the district court erred in failing to address uses of the marks on Redbubble's website and in online advertising. We also need not address LTTB's arguments regarding counterfeiting and contributory infringement.

3. Because LTTB's mark is functional and therefore not protectable on this record, there is no need to address the issue of likelihood of confusion. *See Talking Rain Beverage Co. Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (observing that "we need not reach the distinctiveness and likelihood of confusion issues" because, "notwithstanding its registered trademark, [plaintiff's] bike bottle design is functional").

4. LTTB's argument that the district court erroneously ignored its design marks is similarly unavailing. Unlike copyright and patent laws, trademark laws are "*not* designed to protect originality or creativity," *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003), but to "prevent[] competitors from copying 'a source-identifying mark,'" *id.* at 34 (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163-64 (1995)). Thus, "[i]n general, unless an intellectual property right such as a patent or copyright protects an item, it will be

subject to copying." *Id.* at 33 (quoting *TrafFix*, 532 U.S. at 29); *see also, e.g.*, *id.* at 36 (where "Wal-Mart produced 'knockoffs' of children's clothes designed and manufactured by Samara Brothers," the designs on the clothes could not be protected under the Lanham Act without showing that the designs "'identify the source of the product'" (quoting *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000))). Like the sweater designs in *Wal-Mart*, LTTB's marks are primarily aesthetic on this record, not source-identifying.

**5.** The district court did not improperly rely on the Patent and Trademark Office's initial rejection of Gorski's trademark application in considering whether the mark was merely functional or source-identifying. *Cf. TrafFix*, 532 U.S. at 34 (looking to the prosecution history of an expired patent in considering whether features asserted to be trade dress were functional). Nor did the district court erroneously conflate the standards for registration of a trademark and trademark infringement liability.

• ● •

LTTB's marks do not function as trademarks because they are aesthetic only and do not identify the source of the goods. The allegedly infringing activity does not deceive or mislead consumers about the source of the goods but copies the designs themselves. *See Job's Daughters*, 633 F.2d at 919 ("under the Lanham

8

Act 'one can capitalize on a market or fad created by another provided that it is not accomplished by confusing the public into mistakenly purchasing the product in the belief that the product is the product of the competitor'" (quoting *Am. Footwear Corp. v. Gen. Footwear Co. Ltd.*, 609 F.2d 655, 662 (2d Cir. 1979))).

Because functionality is a defense to the validity of the marks and to LTTB's exclusive right to use the marks, the district court properly granted summary judgment to defendant Redbubble on this ground and was not required to consider LTTB's other arguments.

**AFFIRMED.**