**VUITTON ET FILS S.A., Appellant,**

**v.**

**J. YOUNG ENTERPRISES, INC. et al., Appellees.**

**No. 80–5468.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 1980.

Decided May 4, 1981.

[redacted]

[redacted]

J. Joseph Bainton, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for appellant.

David A. Golant, Romney, Schaap, Golant, Disner & Ashen, Beverly Hills, Cal., on brief; David S. Romney, Beverly Hills, Cal., argued, for appellees.

Before GIBSON,* Senior Circuit Judge, SNEED and TANG, Circuit Judges.

* Honorable Floyd R. Gibson, Senior United States Circuit Judge, U. S. Court of Appeals for the Eighth Circuit, sitting by designation.

FLOYD R. GIBSON, Senior Circuit Judge.

The appellant, Vuitton et Fils, S.A. (appellant or Vuitton), in its complaint sought equitable and monetary relief for trademark infringement, false designation and description of origin, trademark dilution, and unfair competition. The district court granted summary judgment to defendants J. Young Enterprises, Inc., et al. (Young). The principal issue on appeal, aside from the propriety of summary judgment, is whether the fabric design which decorates luggage and related items of Vuitton is entitled to protection as a trademark or whether the design is "functional" and thus not entitled to protection. Vuitton raises several other issues regarding its claim for recovery of profits and attorneys' fees and urges that the district court committed plain error by granting summary judgment to defendants despite the existence of genuine issues of material fact. In addition, Vuitton has filed before this court a motion for an order to show cause why Young should not be cited for civil and criminal contempt for violation of an injunction originally issued by the district court while the case at bar was before it and reinstated by this court while the instant appeal was pending. Appellees aver that the design at issue is not properly protectable by trademark, not only because it is "functional," but also because it is a simulation of the fleur-de-lis, a symbol which appellees identify as an insignia of France.

Inasmuch as we conclude that the factual question of functionality was not adequately disposed of in the summary judgment rendered below, we reverse and remand for a trial on that issue. We also remand the motion to show cause, on the ground that the district court is in a better position than is this court to dispose of it.

I.

Vuitton, a French company, is owned and controlled by members of the Vuitton fami-

ly.. It is engaged in the sale and distribution of expensive luggage, handbags, and related items.

The instant action concerns the design which covers the canvas with which the goods are constructed. Most Vuitton merchandise is covered with dark brown, vinyl-impregnated canvas, bearing an arrangement of the initials "LV" superimposed one upon the other and surrounded by three floral symbols. The design is in a contrasting mustard color. Vuitton claims that the design used in its manufacture is widely recognized as the Vuitton trademark.

Young developed a line of merchandise marketed as "The Lorenzo Young Collection," decorated with a design remarkably similar to that used on Vuitton's merchandise. The Lorenzo Young collection was promoted by means of advertisements which compared that line to Vuitton's. The competing items appear to be identical in size, shape, and configuration, and almost identical in design and coloring, so that Young's merchandise can easily and readily be taken for that of Vuitton.

In January 1978, Vuitton's attorney wrote to Young and claimed that the design on Young's goods constituted an infringement of Vuitton's trademark. Vuitton's attorney demanded that Young discontinue production and distribution of the goods. Young urged that his use of similar product designs was sanctioned by law in that Vuitton's designs were not properly protectable by trademark. This suit followed.

## II.

The complaint, filed December 19, 1978, sought equitable and monetary relief for trademark infringement, 15 U.S.C. § 1114, false designation of origin and false description of goods, 15 U.S.C. § 1125, trademark dilution, California Business and Professional Code § 14330, and unfair competition.

Prior to filing the complaint, counsel for Vuitton contacted appellee Young and informed him of Vuitton's intention to seek a temporary restraining order. At that time, counsel for Young agreed to the entry of a preliminary injunction which "essentially restrained and enjoined Young from imitating, copying or making unauthorized use of Vuitton's registered trademark." *Vuitton et Fils, S.A. v. J. Young Enterprises, Inc.*, 609 F.2d 1335, 1336 (9th Cir. 1979). Two weeks later, the district court, on its own motion, construed the stipulation as a stipulation disposing of the entire case and entered it as a final judgment of the matter. Vuitton appealed the judgment, and this court reversed and directed the district court to reinstate Vuitton's complaint subject to the terms of the stipulation. *Id.* at 1338.

In accordance with this court's directive, the district court scheduled the final pretrial conference. Prior to the hearing, on April 9, 1980, Young filed a motion for summary judgment. On May 5, 1980, the motion was heard and granted. At that time, the court declared Vuitton's registered trademark invalid and dissolved the aforementioned injunction. On June 10, 1980, the court entered its judgment and, in addition to the above, awarded the defendants attorneys' fees for the period after March 31, 1980, the date on which Young proffered an offer of settlement to Vuitton which was subsequently rejected. In addition, the judgment held that even if Vuitton's mark was found to be valid, Vuitton would not be entitled to monetary recovery.

Vuitton moved for a stay of the court's order pending appeal and for restoration of the injunction. The court set the matter for June 30, 1980, and established a briefing schedule. Vuitton immediately filed in this court for summary reversal or in the alternative for a stay of the district court's order and restoration of the preliminary injunction. By order filed July 3, 1980, this court denied the motion for summary reversal but reinstated the preliminary injunction.

## III.

The physical details and designs of a product may be protected under the Lanham Act if these features are "non-functional" and they have acquired a secondary meeting. But, where the features are

"functional," *i. e.*, they connote other than a trademark purpose, they generally are not protectable. *E. g., Pagliero v. Wallace China Co.*, 198 F.2d 339, 343 (9th Cir. 1952); *Truck Equipment Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1217 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Ives Laboratories, Inc. v. Darby Drug Co., Inc.*, 601 F.2d 631, 642–43 (2d Cir. 1979).

Explication of the term "functional," as it is used in trademark law, is found in the following passage from *Pagliero v. Wallace China Co., supra*, 198 F.2d at 343:

> "Functional" ... might be said to connote other than a trade-mark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection. [Citations omitted.]

Young and Vuitton have predictably focused on different aspects of this passage. Young argues that, since the design of Vuitton's products "is an important ingredient in the commercial success of the product," it may be freely imitated. Vuitton argues that its design "is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for the purposes of identification and individuality" and thus imitation may be forbidden.

The district court found: "The repeated pattern fabric design used on plaintiff's goods constitutes the primary decoration of those goods and is a factor in their consumer appeal and saleability and as such is a functional element of the goods. *Pagliero*

*v. Wallace China Co., Ltd., supra*." We disagree with the district court insofar as it found that any feature of a product which contributes to the consumer appeal and saleability of the product is, as a matter of law, a functional element of that product. Neither *Pagliero* nor the cases since decided in accordance with it impel such a conclusion.

## IV.

The designs at issue in *Pagliero*, floral patterns used to decorate hotel china, were neither trademarked, copyrighted, nor patented. The court's discussion regarding the designs, therefore, dealt solely with the claim of unfair competition; the act of trademark infringement alleged was in the usurpation of the names which had been adopted to designate these designs.

We may assume that the four floral pattern designs at issue in *Pagliero* were originally intended primarily to beautify the china and not to identify the manufacturer. In fact, plaintiff, Wallace China Company, alleged that its designs had come to identify their source only after Wallace's extensive advertising of the designs and names popularized them by use in literature distributed by Wallace and its dealers. *Pagliero, supra*, 198 F.2d at 340. *"Through the years* both the designs and their names are alleged to have become associated in the minds of the trade and the consumer as indicating a Wallace product; ...." *Id.* (Emphasis added.) Wallace China Company hoped to convince the court that the designs used on its china had gradually acquired a trademark purpose. There was no assertion by Wallace that the designs had originally been intended to be anything other than aesthetic features. The designs were originated in order to make Wallace's hotel china more attractive than other hotel china, to compete advantageously in a field where "one of the essential selling features ... if, indeed, not the primary, is the design." *Pagliero, supra*, 198 F.2d at 343. The court said: "The attractiveness and eye-appeal of the design sells the china." *Id.* at 343–44. The court concluded that the designs were

"functional" and that "[t]he granting of relief in this type of situation would render Wallace immune from the most direct and effective competition with regard to these lines of china." *Id.* at 344. Once the court found the design to be a functional feature of the china, it found it unnecessary to inquire into the adequacy of the showing made as to secondary meaning of the design. *Id.*

■ In contrast, the design at issue here, a distinctive configuration of the letters "LV" surrounded by flower-like symbols, used to decorate Vuitton's goods, has been entered on the Principal Register of the United States Patent and Trademark Office since August 1979, and has been registered under the same number with the Patent and Trademark Office since 1932. Section 33(a) of the Lanham Act, 15 U.S.C. § 1115(a), provides that any registration issued under the Act "shall be prima facie evidence of registrant's exclusive right to use the registered mark in commerce . . . ." We may assume from the early registration of the mark and from the mark itself, which incorporates the initials of the founder of the Vuitton companies, that the design has been and is intended, at least in part, to indicate the origin of the products. "Where a shape or feature of construction is in its concept arbitrary, it may be or become a legally recognizable trademark because there is no public interest to be protected. In such a case protection would not be lost merely because the shape or feature also serves a useful purpose." *Application of Deister Concentrator Company,* 289 F.2d 496, 506 (C.C.P.A.1961), *cited with approval in Truck Equipment Serv. Co. v. Fruehauf Corp.,* 536 F.2d 1210, 1218 (8th Cir. 1976).

Appellee Young argues that since the product involved here must fill aesthetic requirements of consumers, the design features of the products are vital to consumer appeal and consequently to competition in the sale of the products, and thus they are "functional." Young argues further that since Vuitton's design covers the entire surface of these goods which must fill aesthetic requirements in order to compete successfully, Vuitton's design must be significantly related to its consumer appeal and hence, again, "functional."

Aesthetics are assuredly a factor in the consumer appeal of luggage, handbags, and related accessories. And Vuitton has without doubt succeeded in appealing to consumers with its products. However, analysis of the issue of functionality falls short of its mark if it ends here. This court is not convinced that Vuitton's design as registered, the initials "LV" in a distinctive configuration surrounded by floral symbols, is that aspect of its products which satisfies its consumers' tastes for beauty. It is almost tautological to say that any inquiry into aesthetics requires a search for subjective impulses, difficult to quantify or specify. It is even more difficult to sort out the factors which make up the appeal of products such as luggage and handbags. Consumers of such items may be willing to sacrifice beauty for durability. Since the products are largely carried on the person, a consumer's interest in the prestige afforded by carrying a certain bag may overshadow that person's sense for the purely aesthetic.

■ Young argues that if a design is "related to the reasons consumers purchase that product," it is functional. However, a trademark is always functional in the sense that it helps to sell goods by identifying their manufacturer. The policy expressed in *Pagliero* and the cases decided under it is aimed at avoiding the use of a trademark to monopolize a design feature which, in itself and apart from its identification of source, improves the usefulness or appeal of the object it adorns. *See Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 203 (2d Cir. 1979); *Truck Equipment Serv. Co. v. Fruehauf Corp.,* 536 F.2d 1210, 1218 (8th Cir. 1976); *Restatement of Torts* § 742, comment (a) (1938). Functional features of a product are features "which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." *International Order of Job's*

*Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980). Furthermore, a trademark which identifies the source of goods and incidentally serves another function may still be entitled to protection. *Dallas Cowboys Cheerleaders, Inc., supra*, 604 F.2d at 203; *Ross-Whitney Corp. v. Smith Kline & French Laboratories*, 207 F.2d 190, 196–97 (9th Cir. 1953).

██ The fact that Vuitton's design covers the entire surface of its products is also not dispositive of the issue of functionality. The Lanham Act includes in its definition of trademark "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." 15 U.S.C. § 1127. There is no limitation on the percentage of a product's surface area which may be covered by a trademark. The Court of Customs and Patent Appeals has consistently refused to deny registration of trademarks on the ground that they cover the entire surface of a product. *See, e. g., In re Todd Co.*, 290 F.2d 597 (C.C.P.A.1961). And at least one other circuit has upheld the validity of a trademark which covered the entire surface of a product. *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975) (trademark of hockey team completely covering a round patch sold by defendant) (result disapproved by this court on other grounds, *International Order of Job's Daughters, supra*, 633 F.2d at 918).

### V.

██ We find that the design at issue here does not consist of or comprise an insignia of France.[1] Though a portion of the design bears a resemblance to the fleur-de-lis, the fleur-de-lis is a traditional symbol of royalty rather than an "insignia" of France within the meaning of 15 U.S.C. § 1052(b). The term "national insignia," as used in the statute, is restricted to the official symbols of a government. The reign of French royalty ended over a century ago. Furthermore, Vuitton's design was only in part inspired by the fleur-de-lis.

### VI.

Vuitton argues that the affidavits and other papers submitted by it to the district court raised several genuine issues as to material facts, which were not properly disposed of in the granting of summary judgment.[2] We agree.

██ The issue of functionality has been consistently treated as a question of fact. For example, in *Ives Laboratories, Inc. v. Darby Drug Co.*, 601 F.2d 631, 643 (2d Cir. 1979), the court wrote: "The case for functionality thus depends on the evidence proffered by defendants that copying . . . served a number of utilitarian purposes . . . essential to effective competition." *Accord, Pachmayr Gun Wks., Inc. v. Olin Mathieson Chem. Corp., etc.*, 502 F.2d 802, 805–06 (9th Cir. 1974); *Ross-Whitney Corp. v. Smith Kline & French Laboratories*, 207 F.2d 190, 192 (9th Cir. 1953).

██ Furthermore, under the Lanham Act, registration and entry of a trademark on the Principal Register of the United States Patent and Trademark Office shifts the burden of proof from the plaintiff, who would have to establish his right to exclusive use in a common law infringement action, to the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such protected use. Until recently, the rule was that the presumption of validity of a registered trademark had to be overcome by

---

1. The relevant statute declares in pertinent part that no mark is registrable if it "[c]onsists of or comprises the flag or coat of arms or other insignia of the United States, or any State or municipality, or of any foreign nation, or any simulation thereof." 15 U.S.C. § 1052(b).

2. Summary judgment of course is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56 Fed.R.Civ.P.

clear and convincing evidence. *See e. g., W. D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.,* 377 F.2d 1001 (C.C.P.A.1967); *Aluminum Fabricating Co. v. Season-All Window Corp.,* 259 F.2d 314, 316 (2d Cir. 1958). The Court of Customs has since rejected this position and now requires only a preponderance of the evidence. *Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 373 n.6 (1st Cir. 1980); *Dan Robbins & Associates, Inc. v. Questor Corp.,* 599 F.2d 1009, 1013–14 (C.C.P.A.1979); *Massey Junior College, Inc. v. Fashion Institute of Technology,* 492 F.2d 1399, 1403 (C.C.P.A. 1974). However, the burden of proof is still on the party asserting invalidity—in this case, Young. And, on summary judgment, inferences from the facts must be drawn most favorably to the nonmoving party. *Leaf v. United States,* 588 F.2d 733, 736 (9th Cir. 1978).

In deciding the issue of functionality, the district court was faced with answering the following: if a group of consumers who had never heard of Louis Vuitton were choosing between Vuitton goods and similar goods made from brown, vinyl-impregnated canvas, would the consumers tend to choose the Vuitton goods or would they have any utilitarian reasons for doing so? If the Vuitton mark increases consumer appeal only because of the quality associated with Vuitton goods, or because of the prestige associated with owning a genuine Vuitton product, then the design is serving the legitimate function of a trademark; it is identifying the source of the product, and thus should be protected.

On the other hand, the words enunciated in *Smith v. Chanel, Inc.,* 402 F.2d 562 (9th Cir. 1968) (in the absence of misrepresentation or confusion as to source or sponsorship a seller in promoting his own goods may use the trademark of another to identify the latter's goods in comparative advertising) still ring true. That opinion acknowledged with approval "the traditionally accepted premise that the only legally relevant function of a trademark is to impart information as to the source or sponsorship of the product." *Id.* at 566 (citation omitted). Though appellees in that case urged that

"protection should also be extended to the trademark's commercially more important function of embodying consumer good will created through extensive, skillful, and costly advertising," *id.,* the court rejected that argument as it applied to the facts of that case. "The courts ... have generally confined legal protection to the trademark's source identification function for reasons grounded in public policy favoring a free, competitive economy." *Id.*

In opposition to the motion for summary judgment, Vuitton submitted an affidavit to the district court by one Anne Kaser, a buyer of luggage and handbags for Saks Fifth Avenue. Ms. Kaser submitted that:

> I seriously doubt that there is anyone who would purchase a Vuitton product solely because they found the characteristic Vuitton trademark to be aesthetically pleasing. Thus I believe that it is because the design associates the products with Vuitton that it contributes to the commercial success of Vuitton's merchandise.

This, and other evidence submitted by Vuitton, if accepted by the trier of fact, would defeat the claim that the Vuitton design is functional. Especially in view of the fact that Vuitton's mark is presumed valid because it is registered, we believe that questions of material fact still exist which were not properly disposed of in summary judgment. We therefore remand for a trial on the issue of functionality. If the issue of functionality is resolved favorably to Vuitton, the court will inquire into the question of whether Vuitton's mark has acquired secondary meaning. *See Pagliero v. Wallace China Co., supra,* 198 F.2d at 343–44.

Vuitton's trademark distinguishes its line of goods from similarly constituted items. Apparently the trademark has, through association in the minds of purchasers with goods of superior quality, demonstrated in the marketplace a certain consumer appeal. Vuitton luggage without the distinctive trademark would still be the same luggage. It would carry the same number of items,

last just as long, and be just as serviceable. The only difference would be that it would lack the mark immediately identifying it to the public as an item of luggage manufactured and sold by Vuitton. Vuitton, of course, cannot have a monopoly in producing luggage which has an aesthetically pleasing design or color, but it has created one specific pleasing design, which has been registered as its trademark and which is uniquely associated with its line of goods. If it appears that the trademark has secured a secondary meaning in the marketplace due to its long use and favorable acceptance, Vuitton should be protected in the use of that mark. On this record it appears that Young, as the imitator, is appropriating Vuitton's reputation in the marketplace for Young's own purpose and gain. Nothing prevents Young from constructing or manufacturing its own similar line of luggage with its own unique trademark, and marketing that line without confusing the public about the origin and manufacturer of the goods. By choosing to appropriate Vuitton's decorative design, Young appears to be attempting to piggyback on Vuitton's trademark and the reputation it has acquired in the marketplace over a number of decades. Competition is not hindered by requiring Young to develop its own distinctive design for use in the decoration of its manufactured products, which may be much the same as Vuitton's products in shape and configuration.

The district court also made a limited award of attorneys' fees to appellee Young. Section 35 of the Lanham Act provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. Since we are here reversing the summary disposition of the question of trademark validity, the award of attorneys' fees to Young also must fall.

### VII.

We believe that it was an abuse of the court's discretion under 15 U.S.C. § 1117 to conclude that "even if plaintiff's purported trademark rights were enforceable, this is not an appropriate case for the granting of monetary relief to plaintiff."

Vuitton argues that (a) the "comparative" advertisements used by Young do not preclude a finding of "palming off", (b) those advertisements may constitute a separate violation of the Lanham Act if they are found to be untruthful, (c) Young's business purpose was to misappropriate Vuitton's good will and reputation for quality in violation of the law of unfair competition, and (d) that evidence of the foregoing, if accepted by the trier of fact, would justify an award to Vuitton of Young's profits on their infringing sales. Vuitton claims that the evidence it presented bearing on these issues raised genuine issues of material fact which were not amenable to summary judgment.

Should Vuitton be found to have property rights in the design appropriated by Young, several factual questions will consequently arise. For instance, were Young's products marketed in such a way that there would be likely confusion as to source of manufacture? *B. H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1263 (5th Cir. 1971); *Famolare, Inc. v. Melville Corp.*, 472 F.Supp. 738, 745 (D. Hawaii 1979). If so, Young would be guilty of "palming off" or fraud. Did Young misappropriate the property rights which would be found to exist in Vuitton's trademark? If so, Young might be liable for unfair competition by misappropriation. *Truck Equipment Serv. Co. v. Fruehauf Corp., supra*, 536 F.2d at 1220; *Hygienic Specialties Co. v. H. G. Salzman, Inc.*, 302 F.2d 614, 620–22 (2d Cir. 1962). In other words, several actions for unfair competition, which would involve factual questions not yet adequately explored by the district court, depend upon a finding that property rights are held by the plaintiff, which have been violated in some way by defendant. We therefore reverse and remand that portion of the court's holding which precludes monetary recovery by Vuitton on remand even if he is found to have a valid trademark in the design copied by Young.

### VIII.

Title 28 U.S.C. § 2106 gives this court power to frame its opinion to provide

for "further proceedings . . . [which are] just under the circumstances." This has been construed to include the power to remand a case for further proceedings before a different district judge. *E. g., United States v. Yagid,* 528 F.2d 962, 965 (2d Cir. 1976).

Vuitton urges that this case calls for reassignment to a different judge of the district court. It gives as its reasons (a) that the ruling, delivered from the bench, that Vuitton's registered trademark was invalid, was precipitate and unexplained, (b) the court's apparent desire to rush the action to judgment, (c) the court's persistent failure to afford Vuitton its procedural due, and (d) the court's rendering of its decision by adopting as its opinion the findings of fact and conclusions of law prepared by defendants' attorneys.

We feel that the facts shown here are not sufficiently exaggerated to warrant such a mandate. We do, however, wish to reiterate our disfavor of the practice followed by the court below in adopting one party's proposed findings of fact and conclusions of law substantially verbatim. "We recently disapproved this practice, even when the trial court was not bound to draw all inferences in favor of one party [as it was here, on a motion for summary judgment]. *Photo Electronics Corp. v. England,* 581 F.2d 772, 776–77 (9th Cir. 1978)." *Leaf v. United States,* 588 F.2d 733, 736 (9th Cir. 1978). In *Photo Electronics, supra,* the court said:

> Wholesale adoption of the prevailing party's proposed findings complicates the problems of appellate review . . . .
>
> . . . .
>
> [It raises] the possibility that there was insufficient independent evaluation of the evidence and may cause the losing party to believe that his position has not been given the consideration it deserves. These concerns have caused us to call for more careful scrutiny of adopted findings.

581 F.2d at 776–77 (citations omitted).

The district court's actions do not mandate reassignment to a different judge.

The judge may, of course, recuse himself if he feels that a danger of partiality or the appearance of partiality will exist on remand.

## IX.

The final matter for our consideration, submitted to us by Vuitton, is an order to show cause why appellees should not be cited for civil and criminal contempt. Vuitton alleges that appellees Young and Wessler have violated the injunction originally entered by the district court on January 3, 1980, and reinstated by Judge Choy on June 17, 1980. We decline to rule on this matter and refer it to the district court, which is better equipped to deal with the appropriate inquiry because of its greater familiarity with both the parties and their prior course of conduct and the fact-finding process.

On January 3, 1980, while the underlying action was before the district court, an injunctive order was entered, upon the stipulation of the parties, restraining Young, his business entities, and his agents, *inter alia*, from imitating Vuitton's trademark and from manufacturing, distributing, selling, or advertising any product bearing a colorable imitation of Vuitton's trademark. On June 1, 1980, when the district court entered summary judgment for defendant and ruled that Vuitton's trademark was invalid, this injunction was dissolved. On June 16, 1980, Vuitton made emergency motions to this court. On June 17, 1980, Judge Choy entered an interim order which reinstated the stipulated injunction first entered by the district court without repeating the specifics of the injunction.

On November 5, 1980, Vuitton filed this motion for an order to show cause why appellees Young and Wessler should not be cited for civil and criminal contempt for violation of the injunction. Vuitton also asked for damages occasioned by the contempt, including attorneys' fees. Vuitton alleges that affidavits filed with his motion established that defendants knowingly, intentionally, and willfully disobeyed this court's order filed June 17, 1980, by causing or participating in the manufacture of simulated Vuitton merchandise.

Young opposes the application solely on the ground that this court lacks jurisdiction to entertain it. He argues that "Judge Choy's order did nothing more than revitalize the injunctive order issued by the district court," and that Judge Choy's order, self-executing in nature, cannot be violated by Young's alleged conduct.[3] It is urged that violations of the injunction at issue are cognizable solely in the district court.

An order granting an injunction should be drawn in accordance with the terms of Rule 65(d) of the Rules of Civil Procedure. That rule requires that "[e]very order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and *not by reference to the complaint or other document*, the act or acts sought to be restrained; ...." (Emphasis added). Therefore, Young argues, Judge Choy's order is not, of itself, an injunctive order.

Young further argues that jurisdiction for this motion lies, if at all, with the district court which issued the injunction. It is urged that Judge Choy's order reinstating the district court's injunctive order contemporaneously reinstated the district court's duty to maintain the status quo between the parties. *See Hoffman, etc. v. Beer Drivers & Salesmen's, etc.*, 536 F.2d 1268, 1276 (9th Cir. 1976).

Title 18 U.S.C. § 401 gives this court power to "punish ... such contempt of its authority ... as ... (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." And title 28 U.S.C. § 1651 provides for the issuance of writs by all United States courts necessary or appropriate in aid of their respective jurisdictions. An appellate court has inherent power to make, in its discretion, such restraining orders as may be necessary to preserve the status quo between the parties until the final disposition of any pending appeal.

This court has the power to punish contempt of its authority, whether that authority is exercised by writ, process, order, rule, decree, or command. If the allegations in Vuitton's motion are true, appellees have been contemptuous of this court's authority, as exercised in Judge Choy's order, no matter what the order is called. This court does have jurisdiction over this matter. However, the district court has concurrent jurisdiction. Factual questions are at the heart of this contempt proceeding, and this issue, along with the other issues raised in the complaint, is remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

---

**3.** Judge Choy's order, in pertinent part, provides:

In order to allow a regular motions panel of this court to consider appellant's emergency motion, the court issues the following order:

(a) the district court's judgment of June 11, 1980 is temporarily stayed;

(b) the Injunctive Order pursuant to stipulation entered by the district court on January 3, 1979 shall be in effect pending further order of this court;

(c) appellees' opposition to appellant's motion shall be filed in San Francisco on or before June 24, 1980; and

(d) the motion and opposition thereto shall be considered by the next regular motions panel.