**BIG ISLAND CANDIES, INC.,**
a Hawaii Corporation,
Plaintiff,

v.

**The COOKIE CORNER, a Hawaii General Partnership, James McArthur and Angus McKibbin, the Cookie Masters of Hawaii aka Hawaii Cookie Masters aka Master of Hawaiian Cookies, A Hawaii General Partnership, Defendants.**

Civ. No. 01–00449 SOM/LEK.

United States District Court,
D. Hawai'i.

Jan. 15, 2003.

Richard J. Groos (argued), Fulbright & Jaworski LLP, Austin, TX, Anna M. Elento–Sneed (argued), Carlsmith Ball LLP, Honolulu, HI, for Plaintiff.

William G. Meyer, III (argued), Paul A. Schraff (appeared, but did not argue), Dwyer Schraff Meyer Jossem & Bushnell, Honolulu, HI, for Defendants, For The Cookie Corner, James McArthur, Angus McKibbin, and The Cookie Masters of Hawaii.

*ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT.*

MOLLWAY, District Judge.

## I. INTRODUCTION.

Plaintiff Big Island Candies, Inc. ("BIC"), has sued Defendants The Cookie Corner, James McArthur, Angus McKibbin, and Cookie Masters of Hawaii (collectively "Cookie Corner") for misappropriation of trade dress in connection with Cookie Corner's manufacture and sale of a shortbread cookie dipped diagonally in chocolate (a "diagonally dipped shortbread cookie"): BIC alleges that it has protectable unregistered trade dress rights in (1) the design of BIC's diagonally dipped

shortbread cookie ("the BIC Cookie") and (2) the packaging of the BIC Cookie.

On October 30, 2002, BIC moved for partial summary judgment on the issues of distinctiveness, functionality, and likelihood of confusion (Part I of BIC's motion), and on twenty-one of Cookie Corner's numbered defenses (Part II of BIC's motion) (the "Oct. 30 motion"). The parties stipulated to the bifurcation of that motion on December 5, 2002. Only (1) the functionality of the BIC Cookie design absent the packaging (Section I.B. of BIC's motion) and (2) certain defenses raised by Cookie Corner (Part II of BIC's motion) are presently before this court. While BIC seeks a judgment that the BIC Cookie design is nonfunctional, Cookie Corner has filed a cross-motion for partial summary judgment, arguing that the BIC Cookie design is functional.

Because there are genuine issues of fact as to whether BIC's product design is functional, the court DENIES summary judgment to both parties on the issue of functionality. For the reasons stated below, the court GRANTS in part and DENIES in part BIC's motion with respect to certain defenses raised by Cookie Corner.

## II. *BACKGROUND FACTS.*

BIC began selling the BIC Cookie in 1985. The BIC Cookie is a rectangular shortbread cookie with "bull-nose" corners,[1] dipped diagonally in chocolate. The chocolate covers approximately one-half of the cookie. BIC has advertised and sold the BIC Cookie continuously since 1985.

Sometime in 2000 or 2001, Cookie Corner began selling its own rectangular shortbread cookie with "bull-nose" corners,

dipped diagonally in chocolate (the "Cookie Corner Cookie"). Like the BIC Cookie, the Cookie Corner Cookie is also approximately half-covered in chocolate.

## III. *STANDARD OF REVIEW.*

Summary judgment shall be granted when:

> the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323, 106 S.Ct. 2548. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir.2000).

All evidence and inferences must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir.1987). Inferences may

---

1. "Bull-nose" corners are rounded corners. There are at least two different methods that can be used to create rectangular shortbread cookies. One method is to bake a sheet of shortbread and then cut the shortbread into rectangles, which gives the resulting cookies squared-off, crumbly corners. The second method, used by both BIC and Cookie Corner, is to cut the dough into rectangles before baking the shortbread; the baked cookies have rounded, smooth corners.

be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.* When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.*

## IV. *ANALYSIS.*

### A. *The Cross–Motion Is Disregarded to the Extent That Cookie Corner Seeks Summary Judgment on the Issue of Whether the BIC Cookie Design Is Generic.*

Cookie Corner devotes a large portion of its "cross-motion" to arguing that the design of the BIC Cookie is generic. Under Local Rule 7.9, a cross-motion must raise the "same subject matter" as the "original motion." The "original motion" in this case is BIC's motion for partial summary judgment on the issue of functionality and with respect to certain numbered defenses.

■ The question of whether the BIC Cookie is generic relates to the issue of distinctiveness, not functionality. *See, e.g., Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Distinctiveness is addressed in Section I.A. of the Oct. 30 motion.[2] Pursuant to the stipulated bifurcation of the Oct. 30 motion, Section I.A., i.e., the question of distinctiveness, is not presently before this court. Accordingly, the court disregards the portion of Cookie Corner's cross-motion that seeks summary judgment with respect to the question of whether the BIC Cookie design is distinctive or generic.

### B. *Both the Motion and the Cross–Motion for Partial Summary Judgment on the Issue of Functionality Are Denied.*

■ Both BIC and Cookie Corner have moved for partial summary judgment on the issue of the functionality of the BIC Cookie design. Because there is a genuine issue of material fact as to whether the design of the BIC Cookie is functional, neither party is entitled to summary judgment with respect to the question of functionality.

Trade dress protection extends "only to design features that are nonfunctional." *Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1258 (9th Cir.2001). As the party claiming protectable trade dress, BIC has the burden at trial of demonstrating that the design of the BIC Cookie is nonfunctional. *TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 32, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001).

In evaluating the functionality of the BIC Cookie design, the court focuses "not on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *Clicks,* 251 F.3d at 1259. However, the Ninth Circuit has cautioned that, in a product configuration case in which each of the individual elements of the product configuration is functional, the "overall appearance" of the product cannot be the basis for a finding of nonfunctionality. *Tie Tech, Inc. v. Kinedyne Corp.,* 296 F.3d 778, 786 (9th Cir.2002) (citing *Leatherman Tool Group v. Cooper Indus., Inc.,* 199 F.3d 1009, 1013 (9th Cir.1999), *vacated in part on other grounds,* 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001)).

---

**2.** BIC itself confuses the questions of functionality and distinctiveness in the Oct. 30 motion. In Section I.A. of the Oct. 30 motion, which argues that the BIC Cookie design and packaging are nonfunctional, BIC states:

"[The BIC Cookie] trade dress does not serve any utilitarian function. The trade dress is distinctive and identifies BIC." Oct. 30 Mot. at 12.

The Ninth Circuit shares the common view that "functionality denotes utility." *Clicks*, 251 F.3d at 1260. The court considers multiple factors to determine whether the BIC Cookie design is functional: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir.1998) (citations omitted). No single factor is dispositive; "all should be weighed collectively." *Id.*

On the present record, genuine issues of fact remain with respect to each factor of the test, precluding summary judgment as to the functionality of the design.

Before discussing the four factors of the *Disc Golf* test for functionality, however, the court addresses Cookie Corner's contention that, in the Ninth Circuit, "two standards of functionality" exist, a utilitarian standard and an "aesthetic functionality" standard. Defs.' Mem. in Supp. Of Defs.' Cross–Mot. for Partial Summ. J. & in Opp. to Pl.'s Mot. for Partial Summ. J. at 24 ("Defs.' Cross–Mot. & Opp."). Some circuits, relying on the Ninth Circuit's decision in *Pagliero v. Wallace China Co.*, 198 F.2d 339, 344 (9th Cir.1952) (holding that hotel china patterns were not protected in part because the patterns "satisfie[d] [the purchaser's] demand for the aesthetic as well as for the utilitarian"), have adopted a theory termed "aesthetic functionality" under which purely aesthetic product features are deemed functional. *But see* 1 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 7:81 (4th ed.2002) (arguing that "aesth-

etic functionality" is an oxymoron). The Ninth Circuit, however, "has consistently retreated from the position taken in [*Pagliero* ]." *Id.* § 7:80. *Clicks* noted that the Ninth Circuit has not adopted the theory of "aesthetic functionality." 251 F.3d at 1260 ("Nor has this circuit adopted the 'aesthetic functionality' theory, that is, the notion that a purely aesthetic feature can be functional.").

Cookie Corner argues that, nonetheless, " '[a]esthetic functionality' is alive and well in the Ninth Circuit," Defs.' Reply at 15, because *Pagliero* has not been overruled and is still applicable to product features. *See Fabrica Inc. v. El Dorado Corp.*, 697 F.2d 890, 895 (9th Cir.1983) (noting that "this court has specifically limited application of the *Pagliero* functionality test to product features and has refused to apply the test to cases involving trade dress [3] and packaging").

While *Pagliero* has not been explicitly overruled, subsequent cases have narrowed *Pagliero's* effect. Those cases have noted that a literal reading of *Pagliero's* statement that a product feature that is "an important ingredient in the commercial success of the product" is not protectable would defeat the purpose of trademark law, as "a trademark is always functional in the sense that it helps sell goods by identifying their manufacturer." *Vuitton et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 774 (9th Cir.1981). Rather, "the policy expressed in *Pagliero* and the cases decided under it is aimed at avoiding the use of a trademark to monopolize a design feature which, in itself and apart from its identification of source, improves the usefulness or appeal of the object it adorns." *Id.* However, the Ninth Circuit "has specifically rejected the notion that a

---

**3.** *Fabrica's* distinction between "trade dress" and "product features" is somewhat confusing given that "trade dress" includes product shape and configuration. *See* 1 McCarthy § 7:54.

design feature is functional by definition if it increases appeal and sales of the product." *Fabrica*, 697 F.2d at 895–96. The thrust of these cases, as Ninth Circuit law on the subject has developed, suggests that the aesthetic appeal of the BIC Cookie design should not be considered in the functionality analysis.[4]

Even if, under Ninth Circuit law, the aesthetic appeal of the BIC Cookie should be considered in the court's analysis of functionality, there is no evidence that customers demand the BIC Cookie because of the aesthetic features of its design, apart from the design's identification of source. *See Vuitton*, 644 F.2d at 774. Nor can the court conclude, given the present record, that BIC designed the BIC Cookie to satisfy consumers' "demand for the aesthetic."

Given the above, the court applies the four-factor "utilitarian functionality" test in *Disc Golf*.

### 1. *Utilitarian Advantage.*

■ Cookie Corner argues that the design of the BIC Cookie offers multiple utilitarian advantages. First, it argues that the rectangular BIC Cookie uses one of only three basic cookie shapes—round, square, and rectangular—that are less likely to break in transit and easier to manufacture than other shapes. It then argues that "it is a common practice" to coat one-half of the cookie in chocolate, and that there are three ways to half-dip a rectangular cookie: a "vertical" dip, a "horizontal" dip, and a "diagonal" dip. Cookie Corner contends that only the vertical dip and the diagonal dip offer the

"functional feature" of giving the consumer "chocolate in every bite," and that the diagonal dip offers a larger undipped "handle" for the consumer to hold while eating the cookie.

Cookie Corner further argues that the larger handle also makes the dipping process more convenient for the cookie dippers during cookie production, and that the diagonal dip, in contrast to the vertical and horizontal dips, provides the dipper with two reference points (the corners) so that the cookies will be consistently covered one-half in chocolate.

BIC argues that the design of the BIC Cookie offers no utilitarian advantage to either BIC itself or customers. BIC argues that (1) at least eight shapes of shortbread cookies are commonly used; (2) consumers do not necessarily demand half-dipped cookies with "chocolate in every bite"; (3) even if some consumers do demand half-dipped cookies with "chocolate in every bite," a diagonally dipped cookie does not necessarily provide "chocolate in every bite," as a consumer could eat the end with little to no chocolate without biting into the dipped portion of the cookie; (4) the diagonal dip is not necessarily more efficient for dippers; and (5) consumers may not actually use the undipped portion as a handle, and, even if they do, an undipped handle can be achieved using other dip patterns.

There is a genuine issue of fact as to whether the BIC Cookie design offers any utilitarian advantage. BIC has not established that the BIC Cookie design is nonfunctional. Cookie Corner, for its part,

---

4. Cookie Corner contends that *Clicks* and *Pagliero* can be reconciled by equating a "purely aesthetic feature" (which is nonfunctional according to *Clicks*) with a "mere arbitrary embellishment, a form of dress ... primarily adopted for the purposes of identification and individuality" (which is nonfunctional under *Pagliero*). Presumably, Cookie

Corner then intends to argue that the BIC Cookie design is neither "purely aesthetic" nor "mere arbitrary embellishment." It is not entirely clear to the court how, under these circumstances, reliance on *Pagliero* would help Cookie Corner establish that the BIC Cookie design was functional.

has not established that it is entitled to summary judgment.

The court notes that some of Cookie Corner's arguments relate to the manufacturing process, which should more appropriately be addressed in connection with the fourth factor of the functionality test. Therefore, the court leaves the question of whether the design is more efficient for dippers to its analysis of the fourth factor.

2. *Availability of Alternative Designs.*

It is undisputed that alternative cookie designs are available. Both parties have presented evidence that shortbread cookies may be produced in a wide variety of shapes, including oval and pineapple shapes, and that multiple dipping patterns are available. The parties disagree, however, on the number of alternative designs that are relevant, with Cookie Corner arguing, for instance, that only there are only three common cookie shapes (round, square, and rectangular) that provide the same types of utilitarian advantages, and with BIC contending that there are at least eight.

3. *Advertising.*

BIC denies that it has ever advertised that the BIC Cookie offers any utilitarian advantage.

In support of its contention that BIC has "touted ... the utilitarian advantages of the design," Defs.' Cross–Mot. & Opp. at 27, Cookie Corner offers a number of articles from the press, including articles from magazines *Candy Industry* and *Hawaii Business.*

Most of the articles offered by Cookie Corner do not tout any utilitarian advantage of the BIC Cookie design. For instance, a May 2002 *Candy Industry* article features statements attributed to BIC's founder and President, Allan Ikawa ("Ikawa"), explaining BIC's production process.[5] If anything is indeed "touted" in the *Candy Industry* articles, it is the complexity of BIC's production process.

Cookie Corner does offer one article, however, that suggests that BIC may have touted a utilitarian advantage of the BIC Cookie design, although not in advertising. An article in the August 2000 issue of *Hawaii Business* describes the process that led to the BIC Cookie's design. According to that article, Ikawa developed the BIC Cookie in response to Maui hoteliers' specifications for a cookie to include in their hotels' mini-bars. The article's author wrote: "The snack food had to fit nicely in a box. It had to be crumbleproof. ... The Maui Marriott's food and beverage manager also had a suggestion: How about a diagonal dip of chocolate so that the cookie could be inserted into a scoop of ice cream?"[6]

Cookie Corner has not highlighted that particular paragraph of the *Hawaii Business* article as evidence that BIC has touted the utilitarian advantages of the BIC Cookie design. However, this court finds that the paragraph raises a genuine issue of fact as to the third factor of the test for functionality.

---

**5.** The statements highlighted by Cookie Corner include Ikawa's statements that BIC "couldn't find a machine that could provide the proper angle of chocolate," and that the dipping line is efficient because production switches between shortbreads and dipped products to chocolate batches. The article also explains how BIC Cookies are manufactured.

**6.** The court considers the articles offered by Cookie Corner, because statements directly or indirectly attributed to BIC's President are not hearsay, and the articles themselves are offered as evidence of touting rather than as assertions of truth.

4. *Whether the BIC Cookie Design Results from a Comparatively Simple or Inexpensive Method of Manufacture.*

It is unclear whether the BIC Cookie design results from "a comparatively simple or inexpensive method of manufacture." The parties agree that the only way to achieve the precise diagonal dip pattern of the BIC Cookie, given a shape and size similar to that of the BIC Cookie, is by dipping the cookie by hand. Cookie Corner argues that it is easier to hand-dip diagonally than horizontally because of the natural endpoints created by the opposite corners and because of the larger undipped "handle" for the dippers to hold.

Neither party has offered evidence as to whether machine-dipping is simpler than hand-dipping, or vice versa. BIC asks this court to assume that hand-dipping is a more complex process, but it offers no evidence to that effect. Cookie Corner appears to be contending that hand-dipping is a "simple method of manufacture," but Cookie Corner does not claim or offer evidence that hand-dipping is simpler than machine manufacturing. Defs.' Cross-Mot. & Opp. at 27. Instead, Cookie Corner argues that, *if* one wants to hand-dip a rectangular shortbread cookie so that half of the cookie is covered, a diagonal dip is the most efficient method. That argument is not persuasive, even assuming that a rectangular cookie dipped half in chocolate is otherwise functional, as it is not clear that hand-dipping is simpler or less expensive than using a machine. Moreover, BIC disputes Cookie Corner's contention that it is easier for those doing the dipping to dip cookies diagonally, taking into account the four corners of the cookie, than to dip the cookies vertically.

**C.** *Defenses.*

1. *Summary Judgment Is Granted With Respect to the Eighth Defense (Laches), Tenth Defense (Acquiescence), Eleventh Defense (Estoppel), Twenty–Ninth Defense (Section 2 of the Lanham Act), Thirty–Second Defense (Statute of Limitations), Thirty–Fourth Defense (First Amendment), Forty–Fourth Defense (Standing), and Forty–Ninth Defense (Copyright Masquerading as Trademark).*

Cookie Corner does not oppose summary judgment on its Eighth Defense (laches), Eleventh Defense (estoppel), Thirty–Second Defense (statute of limitations), Thirty–Fourth Defense (First Amendment), Forty–Fourth Defense (standing), and Forty–Ninth Defense (copyright masquerading as trademark). Summary judgment is granted as to those six defenses asserted in Cookie Corner's Answer to Second Amended Complaint.

■ Summary judgment is granted as to the Tenth Defense. The Tenth Defense (acquiescence by BIC), like the Eighth Defense (laches), is a personal defense that relates to a plaintiff's conduct with respect to a particular defendant.[7] *See* 2 McCarthy § 17:17; 5 *id.* §§ 31:41–43. Cookie Corner concedes that BIC's suit against Cookie Corner is timely, as BIC filed suit shortly after Cookie Corner began selling its own diagonally dipped shortbread cookie ("Cookie Corner Cookie"). Cookie Corner has not alleged that BIC has ever engaged in any affirmative conduct that would convey its implied consent to Cookie Corner's use of the asserted trade dress.

■ Summary judgment is granted as to the Twenty–Ninth Defense, which states, "Defendants intend to rely upon all

---

7. McCarthy notes that there is a great deal of "semantic confusion" in the case law with respect to "acquiescence," "laches," and "estoppel by laches." 5 McCarthy § 31:41.

§ 2 bars." Section 2(e)(5) of the Lanham Act provides, "No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it ... [c]onsists of a mark which ... comprises any matter that, as a whole, is functional." 15 U.S.C. § 1052(e)(5). BIC seeks protection of its trade dress under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), not registration under section 2. It is true that "the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). However, section 2 of the Lanham Act does not become applicable to the instant case and provide Cookie Corner with a defense just because functionality may, if Cookie Corner is correct, bar both registration and claims under section 43(a) of the Lanham Act.

### 2. *Summary Judgment Is Denied on the First Defense (Failure to State a Claim).*

Cookie Corner's First Defense asserts that BIC fails to state a claim upon which relief can be granted. Rule 12(b)(6) permits dismissal on that ground. On a motion to dismiss pursuant to Rule 12(b)(6), review is limited to the contents of the complaint, and all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *See Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir.1996) (citations omitted).

Cookie Corner contends that the three "design" elements of the BIC Cookie design are "generic and functional on their face." As this court has determined that genuine issues of material fact remain as to the question of functionality, and as the

parties and the court have addressed neither the question of genericness nor the question of the packaging of the BIC Cookie, summary judgment is denied on the First Defense.

### 3. *Summary Judgment Is Granted on the Seventh Defense (Continuous Prior Use).*

The Seventh Defense states, "Defendants intend to rely on the defense of continuous prior use." In trademark law, ownership rights in a trademark may be acquired through continuous[e] prior use. Cookie Corner has not claimed that it is a prior user of the BIC Cookie design or packaging. Cookie Corner contends only that BIC is "neither the first nor the exclusive user of the alleged trade dress." Defs.' Cross–Mot. & Opp. at 28.

It is undisputed that, as between BIC and Cookie Corner, BIC is the prior user of the trade dress at issue. Cookie Corner has not alleged that any specific third party has priority over BIC based on that third party's continuous prior use. At the hearing on the present motions, Cookie Corner admitted that it had not identified any such party. Even if Cookie Corner were able to identify such a third party, that would not affect Cookie Corner's rights in relation to BIC. *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820–21 (9th Cir.1996).

### 4. *Summary Judgment Is Granted on the Ninth Defense (Abandonment/Waiver).*

In its Ninth Defense, Cookie Corner states that it is relying on "the defense of abandonment and/or waiver." Abandonment of a mark causes the mark to fall into the public domain. Under the Lanham Act, a mark may be deemed "abandoned" in one of two situations: (1) "[w]hen its use has been discontinued with intent not to resume such use," and (2) "[w]hen any course of the owner, including

acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark." 15 U.S.C. § 1127.

Cookie Corner does not allege that BIC has ever discontinued its use of the trade dress in issue. Rather, Cookie Corner's assertion of the Ninth Defense is based on the allegation that "numerous other parties use Plaintiff's alleged trade dress and Plaintiff has failed to enforce its alleged rights against said parties." Defs.' Cross–Mot. & Opp. at 28. Cookie Corner says that, as a result, BIC has lost any rights to the claimed trade dress.

Some cases speak of the plaintiff's failure to sue other potential infringers in terms of "abandonment." 2 McCarthy § 17:17. In the Ninth Circuit, however, failure to sue other potential infringers does not constitute abandonment. *See Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1181 (9th Cir.1988) (stating that "discovery that revealed other potential infringers would be irrelevant under the law of this circuit"); *U.S. Jaycees v. San Francisco Junior Chamber of Commerce,* 354 F.Supp. 61, 73–74 (N.D.Cal. 1972), *aff'd* 513 F.2d 1226 (9th Cir.1975) (noting that "numerous cases" have held that "the existence of infringers other than the defendant was irrelevant to a determination of whether the defendant should be enjoined from continuing in its infringement of plaintiffs' trademarks and in its unfair competition").

Accordingly, BIC is granted summary judgment on Cookie Corner's Tenth Defense. The court notes, however, that the existence of other potential infringers may well be relevant to other issues in this case, including whether or not the alleged trade dress is generic or distinctive. *See* 2 McCarthy § 17:17 (noting that "failure to prosecute others" is relevant only to "the possible impact such failure may have on the strength of the plaintiff's mark").

### 5. Summary Judgment Is Granted on the Twelfth Defense (Unclean Hands).

■ The Twelfth Defense asserts that BIC has "unclean hands." To prevail on a defense of unclean hands in a Lanham Act suit, Cookie Corner must "demonstrate that [BIC's] conduct is inequitable and that the conduct relates to the subject matter of its claims." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 847 (9th Cir.1987). "Equity requires that those seeking its protection shall have acted fairly and without fraud or deceit as to the controversy in issue." *Id.* (citation and emphasis omitted). Cookie Corner has not alleged any basis for the defense of "unclean hands" other than its claim that BIC failed to enforce its alleged rights in the disputed trade dress against persons other than Cookie Corner. Cookie Corner has not identified anything suggesting that BIC acted with fraud or deceit or unfairness. Without more, a reasonable factfinder could not find inequitable conduct by BIC that would serve as a defense for Cookie Corner. If future discovery yields a basis for this defense, Cookie Corner's remedy is to seek an extension of the deadline to amend pleadings, if the amendment deadline has passed by then. If an extension is granted, Cookie Corner may then seek leave to file an amended answer.

### 6. Summary Judgment Is Granted on the Sixteenth Defense (Federal Preemption of State Law) and the Seventeenth Defense (Sears–Compco).

The Sixteenth Defense asserts that "Plaintiff's state-based claims are preempted by federal law." The Seventeenth Defense asserts that "Plaintiff's asserted rights in the facts of this case undermine the objectives of U.S. patent and

U.S. copyright laws and are, therefore, preempted by said laws. (Sears–Compco).” Cookie Corner does not allege that any specific provision of Hawaii state law or any specific “asserted right” is preempted by federal law. Rather, Cookie Corner acknowledged at the hearing that the Sixteenth and Seventeenth Defenses were premised on what it speculates might be a ruling by this court that the alleged trade dress was functional, but nevertheless protected by Hawaii state law, allegedly in violation of the principles set forth in the *Sears–Compco* lines of cases. *See* 1 McCarthy §§ 7:55–58. *See Compco Corp. v. Day–Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964); *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964). *See also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). Although Cookie Corner’s arguments regarding federal preemption of state law could be raised in the appeal of a future ruling, speculation that this court may commit alleged errors of law does not provide a valid defense against BIC’s claims. Accordingly, summary judgment is granted on the Sixteenth and Seventeenth Defenses.

7. *Summary Judgment Is Granted on the Twenty–First Defense (Interstate Commerce) and the Fifty–Fifth Defense (Rule 12).*

■ Cookie Corner asserts in its Twenty–First Defense that “Plaintiff’s alleged mark and/or Defendants’ allegedly infringing mark are not used in, nor do they have a significant impact upon, interstate or international commerce.” For purposes of this motion, the court construes the reference to a “mark” to be a reference to the trade dress of the BIC Cookie design. The Fifty–Fifth Defense is a vague assertion that “Plaintiff is barred from obtaining any of the relief it seeks herein by the defenses identified in Rule 12 of the Federal Rules of Civil Procedure.” Cookie

Corner has clarified this assertion by saying that the Fifty–Fifth Defense was intended to assert a lack of subject matter jurisdiction given the absence of interstate commerce.

Cookie Corner argues that this court lacks subject matter jurisdiction over BIC’s claims because Cookie Corner has not used in interstate commerce the trade dress in issue. Cookie Corner does not dispute that BIC is engaged in interstate commerce and that BIC uses its asserted trade dress in interstate commerce.

Cookie Corner admits that it solicits and accepts telephone and facsimile orders, and that it has sent the Cookie Corner Cookie to customers in various states across the mainland. It does not allege or offer any evidence that these sales are isolated or that Cookie Corner does not intend to continue to ship these cookies to other states.

As defined in the Lanham Act, “commerce” refers to “all commerce which may lawfully be regulated by Congress.” 15 U.S.C. § 1127. The definition of interstate commerce is fairly broad, encompassing (1) the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons and things in interstate commerce, “even though the threats may come only from intrastate activities”; and (3) those activities that substantially affect interstate commerce. *United States v. Lopez,* 514 U.S. 549, 558–59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Under that definition, even a defendant who is engaged solely in intrastate commerce may be held liable under the Lanham Act if the plaintiff uses the asserted mark in interstate commerce, as even the “local use” of the challenged product design or packaging may substantially affect the strength of the plaintiff’s mark. *See, e.g., Thompson Tank & Mfg. Co. v. Thompson,* 693 F.2d 991, 993 (9th Cir.1982); *Maier Brewing*

*Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117, 119–20 (9th Cir.1968).[8] As Cookie Corner concedes that it ships the Cookie Corner Cookie to other states, its activities clearly meet the "commerce" requirement of section 43(a).[9] Morever, even if Cookie Corner advertised and sold the Cookie Corner Cookie only in Hawaii, its activities would have a substantial effect on interstate commerce through its effect on the strength of BIC's alleged trade dress, which BIC uses in interstate commerce. The Twenty–First Defense (interstate commerce) would therefore remain unavailable even in that event. Summary judgment is granted on the Twenty–First Defense. As the Fifty–Fifth Defense is premised on a lack of subject matter jurisdiction given Cookie Corner's claimed non-involvement in interstate commerce, summary judgment is also granted as to the Fifty–Fifth Defense.

8. *Summary Judgment Is Denied on the Thirtieth Defense (Good Faith) and the Fifty–Sixth Defense (Advice of Others).*

■ The Thirtieth Defense asserts that "Defendants have acted in good faith." The Fifty–Sixth Defense asserts a defense of "lack of requisite intent by virtue of the reasonable reliance of Defendants upon the advice and/or expertise of others." On the present record, the court cannot conclude that there is an absence of disputes as to material facts relating to these two defenses. BIC states, correctly, that good

faith is no defense to liability under section 43(a) of the Lanham Act. However, Cookie Corner's intent is relevant to the question of damages. For example, BIC has a dilution claim under 15 U.S.C. § 1125(c). While there may well be questions as to whether BIC can establish all the elements of a dilution claim, the claim, at this point, is pending, and dilution damages, should BIC establish dilution, are expressly affected by willfulness. *See* § 1125(c)(2) (stating that, if willful intent is proven, additional remedies are available to the owner of a mark).

9. *Summary Judgment Is Granted on the Thirty–First Defense (Antitrust Violations) and the Thirty–Seventh Defense (Public Policy).*

There is no evidence that BIC has violated federal or state antitrust law, as asserted in the Thirty–First Defense. Nor is there any evidence supporting the Thirty–Seventh Defense.

There is no evidence that BIC's claims are barred on public policy grounds beyond the policies underlying the statutes under which BIC seeks relief and the policies to which Cookie Corner's other defenses relate. In considering BIC's claims, the court will consider the public policy underlying the relevant statutes, but Cookie Corner has no independent "public policy" defense.

---

**8.** While some of these cases indicate that local use may "affect," rather than "substantially affect," interstate commerce, the common view is clearly that intrastate infringement of a mark substantially affects interstate commerce when the trademark owner's reputation and goodwill have been "built up by use in interstate commerce." *Franchised Stores of N.Y., Inc. v. Winter,* 394 F.2d 664 (2d Cir.1968); 4 McCarthy § 25:56. *See also Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 427 (9th Cir.1977) (citing *Fran-*

*chised Stores* and stating that "purely intrastate infringing activities which [have] a substantial adverse impact on the reputation and good will of a registrant whose products [are] sold in interstate commerce [are] actionable").

**9.** *See also* 4 McCarthy § 25:57 (noting that "[m]odern decisions interpreting the 'use in commerce' requirement for infringement of federally registered marks have virtually eliminated the 'local use' defense").

Summary judgment is granted on both the Thirty–First and the Thirty–Seventh Defenses.

### 10. *Summary Judgment Is Denied on the Thirty–Ninth Defense.*

The Thirty–Ninth Defense states that "[BIC] is barred from obtaining any of the relief it seeks herein because [BIC] has failed to establish facts sufficient to subject Defendants to liability under applicable law." Although BIC states in its motion that it seeks summary judgment on this defense, BIC provided no argument as to the Thirty–Ninth Defense. Summary judgment on this defense is denied.

### 11. *Summary Judgment Is Denied on the Forty–Third Defense (Public Domain).*

The Forty–Third Defense asserts that "the allegedly protectable interests of Plaintiff are in the public domain and/or are standard in the relevant industry." Genericness is a bar to a finding that a particular alleged trade dress is protected. The rationale underlying this rule is that a finding of genericness signifies that the generic "thing" is in the public domain and therefore may not be appropriated as a trademark. *See* 2 McCarthy § 12:2 (noting that "[g]eneric names are regarded by the law as free for all to use" and that "[t]hey are in the public domain"). This court has not yet addressed the question of genericness with respect to either the BIC Cookie design or the BIC Cookie packaging.

## V. *CONCLUSION.*

For the foregoing reasons, both the motion and the cross-motion for partial summary judgment are denied with respect to the issue of functionality. BIC's motion for partial summary judgment is granted in part and denied in part with respect to Cookie Corner's defenses. Summary judgment is granted to BIC as to Cookie Corner's Seventh Defense (continuous pri-

or use), Eighth Defense (laches), Ninth Defense (abandonment/waiver), Tenth Defense (acquiescence), Eleventh Defense (estoppel), Twelfth Defense (unclean hands), Sixteenth Defense (federal preemption of state law), Seventeenth Defense (*Sears–Compco*), Twenty–First Defense (interstate commerce), Twenty–Ninth Defense (section 2 of the Lanham Act), Thirty–First Defense (antitrust violations), Thirty–Second Defense (statute of limitations), Thirty–Fourth Defense (First Amendment), Thirty–Seventh Defense (public policy), Forty–Fourth Defense (standing), Forty–Ninth Defense (copyright masquerading as trademark), and Fifty–Fifth Defense (Rule 12). Summary judgment is denied as to the First Defense (failure to state a claim), Thirtieth Defense (good faith), Thirty–Ninth Defense (failure to establish facts sufficient to subject Cookie Corner to liability), Forty–Third Defense (public domain), and Fifty–Sixth Defense (advice of others).

IT IS SO ORDERED.